WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>$50,460.00 in United States Currency,<br><br>   Defendant. | No. CV-15-02596-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff United States of America's motion for default judgment, against $50,460.00 in United States Currency pursuant to Fed. R. Civ. P. 55(b). (Doc. 10). No response has been filed. The Court will grant the motion.

**I.**

This case is a civil action *in rem* to forfeit money seized by law enforcement from Jamar Jackson. (Doc. 1). On February 24, 2016, the Clerk of the Court entered default as to the defendant property, Jackson, and all other persons or entities who may claim an interest in the defendant property. (Doc. 9). Plaintiff thereafter filed the pending motion for default judgment. (Doc. 10). At no point has Jackson, or any other entity or individual purporting to have an interest in the defendant property, responded to this action.

Upon entry of default, the factual allegations of the Complaint, except those relating to the amount of damages, are taken as true. *Yoo v. Arnold*, 615 Fed. Appx. 868, 870 (9th Cir. 2015); *Fair Housing of Marin. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002);

*Televideo Systems*, *Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). The Court thus accepts as true the well-pleaded facts contained in the Complaint. (Doc. 1).

## II.

Fed. R. Civ. P. 55(a) establishes that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." Once a default has been entered, and a defendant fails to appear to move to set aside the default, then the Court may enter a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). The "general rule" with respect to default judgments is that they "are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citing *Pena v. Sequros La Comercial*, *S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Nonetheless, "[g]ranting default judgment is within the court's discretion." *EEOC v. Recession Proof United States LLC*, No. 11-CV-01355-PHX-BSB, 2013 U.S. Dist. LEXIS 171524, at *8 (D. Ariz. Aug. 19, 2013).

Plaintiff moves the Court to exercise its discretion and enter default judgment in its favor with respect to $50,460.00 in United States Currency. In exercising this discretion, the Court is guided by consideration of the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72 (citation omitted). The Court will address each of the applicable factors in turn.

### A.   Possible Prejudice to Plaintiff

The first *Eitel* factor weighs in favor of granting Plaintiff's motion, as Plaintiff will be prejudiced if default judgment is not entered in its favor. As noted *supra*, at no

point has Mr. Jackson—or any other individual or entity purporting to have an interest in the defendant property—responded to this action, and the record reflects that Plaintiff gave proper notice. (Docs. 6, 7). If the motion for default judgment is not granted, Plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also United States v. $86,496.00 in United States Currency*, No. CV-07-1693-PHX-DGC, 2008 U.S. Dist. LEXIS 115052, at *4-5 (D. Ariz. July 1, 2008) (citation omitted).

## B.     Merits of Plaintiff's Forfeiture Claims

The Court next considers the merits of Plaintiff's substantive claim. "The procedures governing civil forfeiture actions are set forth in various forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and this District Court's Local Rules, if any." *United States v. $50,000 in United States Currency*, No. CV-10-2004, 2011 U.S. Dist. LEXIS 63448, at *3 (D. Ariz. June 16, 2011). Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *United States v. $79,010.00 in United States Currency*, No. CV-10-0244-PHX-DGC, 2012 U.S. Dist. LEXIS 48148, at *3 (D. Ariz. April 4, 2012); *see also United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002) ("CAFRA transferred the burden of proof from the claimant to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the lower probable cause standard[.]").

In the instant matter, Plaintiff alleges that the defendant property was intended to be furnished in exchange for a "controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*.," and that the defendant property "constitutes or is derived from proceeds traceable to . . . the movement of the proceeds of trafficking in controlled substances . . . in violation of 18 U.S.C. § 1952." (Doc. 1 at 15).

1   Thus, based on violations of these two statutory provisions, the defendant property is
2   subject to forfeiture under to 18 U.S.C. § 181(a)(1)(A),(C). Having reviewed Plaintiff's
3   Complaint—accepting the well-pleaded facts contained therein as true—the Court finds
4   that Plaintiff has met its burden under CAFRA and demonstrated by a preponderance of
5   the evidence that the defendant property is subject to forfeiture.

6   The Complaint establishes that Jamar Jackson was initially approached by law
7   enforcement at Philadelphia International Airport after purchasing a one-way ticket to
8   travel to Phoenix the prior day. (Doc. 1 at 2-3). Plaintiff was carrying $50,460.000 in
9   United States Currency on his person. (*Id.* at 2). After being approached prior to boarding
10  his flight in Philadelphia, Jackson told law enforcement that he had $30,000 in his
11  possession for the purpose of buying a vehicle in Phoenix, Arizona. (*Id.*). Jackson further
12  claimed that his friend "Charles," in Phoenix, had identified the vehicle for him to
13  purchase at an auction. (*Id.*). Law enforcement permitted Jackson to board his flight, and
14  turned to investigating Jackson's claims.

15  Investigation determined that Jackson's friend, "Charles" had not spoken with
16  Jackson "in over two years" and knew nothing of a vehicle purchase from an auction in
17  Phoenix. (*Id.*). After Jackson landed at Phoenix Sky Harbor International Airport, law
18  enforcement made contact with him in the airport terminal. At this time, Jackson told law
19  enforcement that he had "a little over $30,000 on his person," (*Id.* at 5), and then
20  $35,000, and claimed that the Currency was generated from a janitorial service business
21  that he owned in Philadelphia, Pennsylvania. (*Id.*). Investigation determined that no such
22  entity was licensed to do business in Pennsylvania at that time, and that the amount of
23  Currency Jackson was carrying was well outside any reasonable amount a purported
24  business of that nature could generate over the applicable period of time.

25  As law enforcement continued to interact with Jackson, he revised the amount of
26  Currency he was carrying, claiming that it was $38,000, and then "closer to $40,000."
27  (Doc. 1 at 5). While Jackson maintained that he had withdrawn this money from his
28  Wells Fargo Bank account and a TD Bank account, law enforcement determined that the

1  balance of his Wells Fargo account had "never exceeded a few hundred dollars" and that
2  immediately before flying from Philadelphia to Phoenix, Jackson made a cash deposit of
3  $14,200 to his TD Bank account "and immediately withdrew cash in the amount of
4  $13,500." (*Id.* at 8). When law enforcement advised Jackson of the $10,000 discrepancy
5  between what he asserted that he was carrying and what was actually in his possession,
6  Jackson responded by saying that "he was just trying to buy a car." (*Id.*).

7  Jackson also has an established criminal history based on controlled substances
8  offenses, (Doc. 1 at 7), which the Court may consider in an *in rem* forfeiture action. Law
9  enforcement uncovered a series of text communications between Jackson and his
10 girlfriend in Philadelphia, utilizing code words that appeared to direct his girlfriend to
11 dispose of the remaining drugs at his residence and rent a hotel room for safekeeping
12 narcotics and currency. (*Id.* at 10-11). Another text conversation in Jackson's cell phone
13 stated that "someone needed '100 white'" which Jackson affirmed was cocaine. (*Id.* at
14 11). Jackson maintained that he was "using" cocaine when law enforcement asked if he
15 was selling it. (*Id.*).

16 In sum, the facts show that Jackson bought a one-way, last minute plane ticket to
17 travel to Phoenix, *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th
18 Cir. 2006) (noting that the purchase of a one-way ticket can be evidence of "highly
19 suspicious" travel circumstances "in favor of forfeiture"), and made false statements to
20 law enforcement concerning the purpose of his visit. Jackson has a history of violating
21 controlled substances law, *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231,
22 1236 (9th Cir. 1988) (noting that a claimant's prior arrests and convictions on drug
23 charges "are circumstances demonstrating more than mere suspicion of his connection
24 with an illegal drug transaction"), *United States v. $79,010.00 in United States Currency*,
25 2012 U.S. Dist. LEXIS 48148, at *18-19 (finding that even under "the newer
26 preponderance of the evidence standard, the relevancy of looking to prior drug related
27 activity is without question"), he made numerous (additional) false statements to law
28 enforcement, *United States v. $22,474.00 in United States Currency*, 246 F.3d 1212,

1217 (9th Cir. 2001) (citation omitted) (discussing the claimant's "false statements regarding the currency's source and his employment record"), and was carrying an exceedingly large amount of money. *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571 (9th Cir. 1984) (noting that the discovery of a large quantity of cash can be "strong evidence that the money was furnished or intended to be furnished in return for drugs"). Moreover, Jackson neither knew the exact amount of nor could account for its origins, and was carrying the money for a purpose that appeared to be a cover for illicit activity. Finally, evidence recovered from Jackson's cell phone corroborates these facts, and strengthens the claim that Jackson was traveling to Phoenix to engage in the purchase or trafficking of controlled substances.

18 U.S.C. § 1952 outlaws proceeds traceable to the trafficking in controlled substances with the intent to promote and carry on trafficking in controlled substances, and subjects them to civil forfeiture under 18 U.S.C. § 981(a)(1)(C). Based on the aforementioned pleaded facts, taken as true, the Court finds that Plaintiff has established by a preponderance of the evidence that the defendant property is proceeds related to the trafficking in controlled substances. It follows that the second *Eitel* factor favors granting Plaintiff summary judgment.

### C.     The Sufficiency of the Complaint

The Court previously found that the Complaint established by a preponderance of the evidence that the defendant property is subject to forfeiture. The Ninth Circuit has suggested that the third *Eitel* factor requires that Plaintiff's Complaint "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Based on the Court's analysis of the merits of Plaintiff's claim, nothing suggests that the Complaint fails to "state a claim on which the [plaintiff] may recover," or that it fails to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The third *Eitel* factor thus favors granting the motion for default judgment.

### D. Amount at Stake

Under the fourth *Eitel* factor, the Court must examine "the sum of money at stake in relation to the seriousness of [the individual's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2008 U.S. Dist. LEXIS 81469, at *12 (D. Ariz. Jan. 3, 2008). Here, the $50,460.00 subject to forfeiture is a substantial amount of money. Nonetheless, the money was more likely than not being utilized in the trafficking of a sizable amount of illicit narcotics. In light of the "serious nature of the crimes at issue," the Court finds that the amount Plaintiff seeks to forfeit is reasonable, and is neither "completely disproportionate" nor "inappropriate." *See United States v. $86,496.00 in United States Currency*, No. CV-07-1693-PHX-DGC, 2008 U.S. Dist. LEXIS 115052, at *5-6 (finding that the forfeiture of $86,496.00 in "proceeds related to illegal drug trafficking" was "reasonable");

### E. Possible Dispute Concerning Material Facts

Jackson, and any other individual or entity purporting to hold an interest in the defendant property, have failed to answer this action at any point. On February 26, 2016, the Clerk of the Court entered default pursuant to Rule 55. (Doc. 9). In the intervening one hundred plus days, no answer was filed, and no relief was sought from the Clerk's entry. Upon entry of default, the factual allegations of a Complaint, except those relating to the amount of damages, are taken as true. *Yoo*, 615 Fed. Appx. at 870; *Fair Housing of Marin.*, 285 F.3d at 906; *Televideo Systems, Inc.*, 826 F.2d at 917. There is no dispute concerning material facts, and this factor weighs in favor of granting default judgment.

### F. Whether Default Was Due to Excusable Neglect

Jackson has not responded to this action since it was filed, and, through his counsel, was served with proper notice. (Doc. 6). Neither Jackson, nor his counsel, have

offered any explanation for the failure to meet the deadlines associated with Plaintiff's action. It is therefore highly unlikely that Jackson's "failure to answer and the resulting default was a result of excusable neglect." *Gemmel*, 2008 U.S. Dist. LEXIS 81469, at *13; *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding that no excusable neglect occurred where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

### G. Policy Underlying Federal Rules of Civil Procedure

The final factor—the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—at least initially appears to weigh against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere presence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Rule 55 permits termination of a case before the Court hears the merits whenever a defendant fails to defend against an action. Moreover, the failure of anyone with an interest in the property at issue to contest the Complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Accordingly, the final *Eitel* factor is not sufficient to preclude the Court from entering default judgment.

Having reviewed Plaintiff's motion for default judgment and analyzed the applicable factors set forth in *Eitel*, the Court finds that factors one through six weigh in favor of granting Plaintiff's motion. The final *Eitel* factor—deciding cases on their merits where reasonably possible—is not sufficient to outweigh the aforementioned six factors. Therefore, for the reasons set forth herein, the Court finds that Plaintiff is entitled to default judgment. Jamar Jackson, and all other individuals or entities, forfeit any and all interest in defendant property, $50,460.00 in United States Currency. Judgment will be entered accordingly.

## III.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default Judgment, (Doc. 10), is hereby **GRANTED**, and the interest of Jamar Jackson and all others in defendant property $50,460.00 in United States Currency, is forfeited to the United States of America in accordance with 21 U.S.C. § 881 and 18 U.S.C. § 981(a)(1)(A) and (C).

**IT IS FURTHER ORDERED** that the $50,460.00 in defendant property at issue in this *in rem* action be disposed of according to law.

Dated this 15th day of June, 2016.

*James A. Teilborg*
Senior United States District Judge